Todd E. Macaluso, Esq. (SNB: 133009)
**MACALUSO & ASSOCIATES, APC**
2100 Palomar Airport Rd., Suite 221
Carlsbad, CA 92011
Telephone: (760) 448-1133
Facsimile: (760) 448-1134

Attorneys for Plaintiffs
Nicolas Marsch, III and Patricia Marsch

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLAS MARSCH, III and PATRICIA MARSCH;<br><br>Plaintiffs,<br><br>vs.<br><br>FRANDZEL, ROBINS, BLOOM & CSATO, a Limited Liability Company and KENNEDY WILSON, a Publicly Traded Company incorporated in the State of Delaware,<br><br>Defendants, | Case No. **'11CV2460 IEG WMc**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1) FAIR DEBT COLLECTION PRACTICES ACT; 15 U.S.C. § 1692;<br><br>2) ROSENTHAL ACT; California Civil Code § 1788, et seq.<br><br>3) CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, et. Seq.<br><br>4) ABUSE OF PROCESS<br><br>**JURY DEMAND** |

Plaintiffs, complain as follows.

## PRELIMINARY STATEMENT

This action brought under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ( "FDCPA"), and the U.S. Supreme Court case of *Jerman v.Carlisle,* 130 S.Ct. 1605 (2010) which prohibit debt collector attorneys, specifically including foreclosure and eviction attorneys, from engaging in abusive, deceptive, and unfair practices and seeks declaratory and injunctive relief, statutory damages, actual damages, punitive damages and attorneys fees.

## INTRODUCTION

1. Plaintiffs Nicolas Marsch, III and Patricia Marsch are now, and at all times relevant to this complaint were owners of certain real property known as 8460 EL PASEO GRANDE, LA JOLLA, CA 92037, 153 25th St, DEL MAR, CA 92014, 18477 VIA CANDELA. RANCHO SANTA FE, CA 92019, 18451 VIA CANDELA (LOTS 8 & 9), RANCHO SNATA FE, CA, 92019. At its core, this case is about predatory lending practices, and the biggest fraud ever perpetrated in the U.S. securitization. Specifically, this case is brought against the above named Defendants who were involved in the fraud by aiding and abetting in the subsequent fraudulent, deceptive and abusive foreclosure and attempted eviction of Plaintiffs.

2. Plaintiff's loan was securitized ("the Loan".) As is typical when a loan is securitized, the funds Plaintiffs borrowed did not come from any source that Plaintiffs could readily identify. Instead, the money came from "Investors," the identity of whom was concealed by those involved in originating the loan ("Originators"). Notably, Investors all over the United States who actually loaned Plaintiffs money in the first place have filed their own legal actions based at least in part on the very same allegations of predatory lending Plaintiffs were subjected to. Some examples are*: New Orleans Employees' Retirement System et al v. Federal Deposit Insurance Corporation, et al.,* United States District Court, Western District of Washington at

1  Seattle, Case *No: 2:09-cv-00134-MJP*E. Even quasi-federal agencies that invested are filing
2  actions. *See, e.g., Federal Home Loan Bank of San Francisco v. Credit Suisse*, CGC-10-497840
3  and *Federal Home Loan Bank of San Francisco v Deutsche Bank,* CGC-10-497839, San
4  Francisco Superior Court (collectively all of the above investor actions are the "Investor Cases").
5  The Federal Home Loan Bank of New York, reputed to be the largest and most powerful
6  banking institution in the world has publicly it's intention to file similar suit against Bank of
7  America.
8  
9         3.    Even before the loans were made, the "Securitizers" had planned and arranged to
10  securitize the loans. In the course of securitizing the loans, Securitizers had a practice of taking
11  more money from the Investors than was loaned to the Homeowners, and they concealed this
12  practice from both the Homeowners (including Plaintiffs and those similarly situated) and the
13  Investors. In addition, there were usually "credit enhancements" which could take several forms
14  including such things as "excess spreads", over collateralization, reserve accounts, surety bonds,
15  wrapped securities, letters of credit, and cash collateral accounts. (See,
16  http://en.wikipedia.org/wiki/Credit_enhancement for a more detailed description). On
17  information and belief, Plaintiffs allege that the well-known problems with American
18  International Group (AIG) relate to credit enhancements. Both the Plaintiffs and the Investors
19  have claims to the credit enhancement funds as well as fees taken by the Originators and
20  Securitizers and possible credits and offsets for other items.
21  
22         4.    As to Plaintiffs, such funds should be credited against their loans. But it is even
23  worse. For example, according to Plaintiffs' records they overpaid at least tens of thousands of
24  dollars were not actually owed. Plaintiffs allege that once a proper accounting is done and
25  proper credits applied, it will be shown that Plaintiffs will owe nothing on their loans making the
26  unlawful detainer action used to evict them simply a part of the ongoing fraud. The Defendants

had actual knowledge of this, yet, Defendants decided to aid and abet in the fraud.

## SECURITIZATION OF MORTGAGE LOANS INCLUDING PLAINTIFFS

5. Securitization is intentionally complex and the details and even some of the mathematical calculations involved cannot be succinctly set forth in a complaint.

6. As set forth in the Investor Cases, the securities that the Securitizers sold are so-called asset-backed securities, or "ABS," created in a process known as securitization. More specifically, they involved a complex financial instrument product known generically in the securities industry as collateralized debt obligations ("CDOs"). "Synthetic" CDOs are even more complex instruments that are "derivatives" based only indirectly on the CDOs (i.e., Credit Default Swaps).

7. Securitization begins with the sale of bonds to Investors (usually they are sold "forward") meaning they are sold to the investors before the Investors' funds are given to mortgage borrowers such as the Plaintiffs. Only some of the funds were then used to fund loans such as Plaintiffs Home owners.

8. The entities involved in making the loans are known as the Originators. The process by which the Originators decide whether or not to make particular loans is known as the underwriting of loans. During the loan underwriting process, the way the securitization scheme was structured, it was actually in the best interests of the "Securitizers" (including Originators) for the loans to fail. They were clearly not acting with the interests of Plaintiffs or the Investors in mind.

9. Until the loans are securitized, the borrowers on the loans sometimes make their loan payments to an Originator, but this may never occur or only be for a very short time. Collectively, the payments on the loans are known as the cash flow from the loans.

10. A large number of loans, often of a similar type, were supposed to be grouped

into a collateral pool. The Originator of those loans claims it sells them (and, with them, the right to receive the cash flow) to a special purpose vehicle called a trust by the Securitizers. The trust is supposed to pay the Originator cash for the loans. As mentioned, the trust raises the cash to pay for the loans by selling bonds, in the form of certificates, to Investors. Each certificate purportedly entitles its holder to an agreed part of the cash flow from the loans in the collateral pool.

11.     There are tranches of investment bonds sold.[1] Typically, "Tranche A" is a veneer of conventional mortgages where the borrowers appear creditworthy. Other tranches had much less credit worthy borrowers. Using the creditworthy borrowers, the Securitizers obtained ratings on the bonds that were inaccurate at best. Thus, schematically, these are some of the steps in a securitization in no specific order:

a. Investments are created for Investors usually in the form of Bonds.
b. Credit Enhancements are obtained.
c. Investors pay money to the trust.
d. The trust issues certificates to the Investors.
e. The trust pays money to the parties up the chain toward the borrower/property owner through the Originators.
f. Only part of the funds are used to fund mortgage loans such as the one made to plaintiffs.
g. The rest of the money is kept by the Originators and Securitizers. In other words, by way of example, the Investors might think they are funding a loan for $1 million, however, only $500,000 is actually loaned to borrowers such as the plaintiffs, and the Securitizers keep the rest through a complex series of transactions.
h. The Originator and Securitizers plan in advance for the loans to default.
i. Loans made to persons like Plaintiffs are purportedly placed into one or more pools.

---

[1] "Tranche" is a French word for "slice". A tranche is a portion, or slice of a structured financing. Different tranches have different risks, rewards, and/or maturities.

j. The Originator was supposed to assign to the trust the loans and in particular the promissory notes, which were to be placed into a collateral pool, including the right to receive the cash, but a proper assignment/transfer was never done.

k. The trust is supposed to collect cash flow from payments on the loans in the collateral pool; however it has no legal right to do so even under the lengthy, complex documents used in securitization.

l. When the mortgage loans go into default, the Securitizers demand that payment be made to the Investors by the "credit enhancements."

m. In "Credit Default Swaps" the Securitizers also placed "bets" that the loans would not pay off (as was planned) in order to cover the difference between what was loaned to borrowers such as Plaintiff and what was funded by the Investors and make another hidden profit for the Securitizers. According to some published reports, these unregistered securities were frequently more than 30 times the principal on the mortgage loans (such as Plaintiffs'). Thus, if the borrowers such as Plaintiffs did not perform on the loans, the Securitizers would make more money than if they did.

n. After default, even though the mortgage loan is technically paid in full if a proper accounting were done, and legally the Securitizers have no right to collect, the Securitizers, usually through "servicers", pretend the loan is still owed by the borrowers. They pretend money is owed on the loans to the original named "beneficiary" on the deed of trust, and try to foreclose on the mortgage and steal the mortgaged real property from borrowers such as the Plaintiffs. The Mortgage Electronic Registration System ("MERS") was often used as a part of the scheme named as the "nominal beneficiary" to pretend it had the right to transfer the mortgages and/or collect money from the borrowers such as Plaintiffs.

o. Securitizers hire law firms such as Defendants who know or should know collection of loans such as the Subject Loan is improper. (*In Re Nosek*, 406 B.R. 434.)

p. Recently, the U.S. Supreme Court has found that these law firms are liable

in class actions under the Fair Debt Collection Practices Act. (*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LP, et al.,* 130 S. Ct. 1605; decided April 21, 2010).

12.  At the risk of being redundant, but also more specific and adding that the taxpayers are paying for this, the order of things is usually as follows:

The first transactions that occurred were the sale of securities to unsuspecting investors.

The second transaction that occurred was that the investor money was put into an account at an investment banking firm.

The third transaction was that the investment banker divided the money between fees for itself and then distributing the funds to aggregators or a Depository Institution.

The fourth transaction was the closing with the borrower. The loan was funded with the money from the investor after deducting large undisclosed fees and also because of the disparity between the interest payable to the investor and the interest payable by the borrower, a yield spread was created, adding huge sums to what the investment banker took from borrowers.

The fifth was the assignment and acceptance of the loan generally into between 1 and 3 asset pools, describing the pool such that they appeared to be different assets than already presumed to exist in the first pool.

The sixth was the receipt of insurance or counter-party payments on behalf of the pool pursuant to the documents creating the securitization structure.

The seventh was the re-securitization of the pooled assets between one and three times.

The eighth was the federal bailout payments and receipts allocable to the balances owed on the loans that were to be part of the pool.

The ninth are the foreclosures by parties who never provided any money which is often the original named beneficiary on the trust deed.

In the alternative fraudulent and forged assignments were made, so it could be alleged the law firm defendants represent investors ("robo-signing") occurred which

is currently the subject of criminal investigations.[2]

Lastly, attorneys are hired to evict the Homeowners such as plaintiffs.

After eviction, the house is sold to a new Home owner who is also defrauded and no one knows at this point where the proceeds from the sales go.

It is unlikely it goes back to the government which has at least indirectly funded all this through "bail outs".

13. Securitization involves many documents. In broad brush, it involves the closing documents between loan Originators, Servicers, Special Purpose Vehicles, Aggregators, etc. including the Pooling and Service Agreements, the Assignment and Assumption Agreements, the Master Service Agreements. None of these include the borrower as party or references any specific debtor or borrower because the debtor is unknown when the securitization structure is created.

14. Each securitization has a Sponsor, a prime mover of the securitization. Sometimes the sponsor is the Originator or an affiliate. In Originator-sponsored securitizations, the collateral pool usually contains loans made by the Investors. Sometimes, the Sponsor may be an investment bank.

15. The two important documents in the mortgage loan made to the Home owner/borrower are the promissory note and the mortgage (usually a deed of trust as in Plaintiff's loan in California).

16. The Sponsor is supposed to arrange for title to the mortgage loans to be transferred to an entity known as the Depositor, which then was supposed to transfer title to the loans to the trust, including the promissory notes.

17. As mentioned, the assignment of the notes and mortgages never properly occurred

---

[2] See, http://online.wsj.com/article/SB10001424052702303450704575160242758576742.html?mod=WSJ_hps_LEFTWhatsNews

8
COMPLAINT FOR DAMAGES

and this is the subject of countless lawsuits by the borrowers such as Plaintiffs.[3]

18. The obligor of the certificates in a securitization is supposed to be the trust that purchases the loans in the collateral pool. However, this cannot be true because title to the mortgage loans was never perfected. The trust is a mere conduit that has no power to do anything, and has no real trustee.

19. The Pooling and Service Agreements provide certain time deadlines by which transfers were to be made, and these were not met.

20. When a trust has no assets it cannot satisfy the liabilities of an issuer of securities (the certificates). According to the Investor Cases, the law therefore treats the Depositor as the issuer of an asset-backed certificate.

21. According to the Investor Cases, securities dealers, underwrote the sale of the certificates. Most important, securities underwriters provided to potential investors the information that they need to decide whether to purchase certificates.

22. Because the cash flow from the loans in the collateral pool of a securitization is purportedly the source of funds to pay the holders of the certificates issued by the trust, the credit quality of those certificates, if this were true, would be dependent upon the credit quality of the loans in the collateral pool. According to the Investor Cases, the most important information about the credit quality of those loans is contained in the files that the Originator develops while making the loans, the so-called loan files. For residential mortgage loans, each loan file normally contains the information in such important documents as the borrower's application for the loan,

---

[3] This is the point where the Mortgage Electronic Registration System ("MERS") became a part of the scheme which is itself subject to an increasing number of lawsuits including class actions, as in, for example, New York (*Campbell v. MERSCORP, Inc, et al.*, USDC, E.D. NY, Case #10CV3800, filed August 17, 2010), and Florida (*Figueroa v. MERSCORP, Inc., et al.*, USDC, S.D.Fla, Case #10CV61296-CMA, filed July 26, 2010). Recently, even Fannie Mae issued new rules stating the MERS has no authority concerning its loans.

credit reports on the borrower, and an appraisal of the property that will secure the loan.

23.     Collateral pools usually include thousands of loans. Instead of potential investors individually reviewing thousands of loan files, the securities firms that would underwrite the sale of the certificates in a securitization were supposedly responsible for gathering and information about the credit quality of the loans that will be deposited into the trust.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction under the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k, and over the state claims pursuant to supplemental jurisdiction, 28 U.S.C. § 1367.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the Defendants, and each of them violated Federal Law and the acts complained of occurred here. Plaintiffs' action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## PARTIES

26.     Plaintiffs are all occupants of the Subject Property and are "consumers" as that term is defined by U.S.C. § 1692a(3).

27.     Defendant FRANDZEL, ROBINS, BLOOM & CSATO ("FRANDZEL") is a law firm with it's principal place of business located in Orange County, California.

28.     Defendant KENNEDY WILSON ("KENNEDY") is a publicly traded company, incorporated in the State of Delaware and have their principal place of business in Los Angeles County, California. FRANDZEL AND KENNEDY are agents, successors, joint venturers and participants in connection with the falsification of certain loan documents, assignments, notices of defaults, foreclosures and unlawful detainer actions.

29.     Defendants FRANDZEL and KENNEDY were the agent and joint venturer with

Deutsch Bank who claims to be the holder of certain notes with respect to the subject properties referenced above.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FDCPA, 15 U.S.C. § 1692
### (Against All Defendants)

30. Plaintiff repeats and re-alleges each and every allegation contained above.

31. Defendants have concealed the roles of the parties and Plaintiffs are unsure who, other than named defendants, are "debt collectors". Plaintiffs will amend this complaint when all the appropriate parties who were debt collectors are discovered.

32. Federal law prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt..."

33. In trying to collect the loan specifically including, but not limited to, engaging in foreclosure proceedings and prosecuting an unlawful detainer the debt collector Defendants violated the provisions of the Unfair Debt Collection Practices Act by engaging in unfair debt collection practices.

34. Defendants did not, and cannot, obtain and/or file an assignment of the Notes or trust deeds of the named Plaintiffs at this time as it would violate the "Pooling and Service Agreements" used in securitization. Securitizers discovered that that the assignments and proper documents to collect the Subject Loans could not actually be located. To solve the problem of missing assignments, and other documents, new assignments were made and recorded. Most of these Assignments including those allegedly affecting the notes and mortgage for Plaintiffs' residences. The Assignments were prepared by specially selected law firms and companies that specialized in providing "mortgage default services" to banks and mortgage companies and which is the subject of a criminal investigation.

35. In all of these cases, the Assignments were prepared to conceal that no valid or proper assignments of the promissory notes or trust deeds ever occurred.

36. The foregoing acts and omissions of Defendants constitute violations of the FDCPA, including, but not limited to, 1692c, 1692d, 1692e, 1692f, 1692g, and 1692i.

37. Plaintiffs are entitled to recover equitable relief, statutory damages, actual damages, reasonable attorney's fees, and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT ("Rosenthal Act")
## California Civil Code § 1788, et seq.
### (Against All Defendants)

38. Plaintiffs repeats and re-alleges each and every allegation contained above.

39. "Debt collectors" named in this cause of action are subject to the Rosenthal Act.

40. Defendants have concealed the roles of the parties and Plaintiffs are unsure who the other "debt collectors" of the loans are, and Plaintiffs will amend this complaint when the appropriate parties who were debt collectors are discovered.

41. Defendants' actions constitute a violation of California Civil Code § 1788, *et seq.*, also known as the Rosenthal Act, in that they used unfair and unconscionable means in an attempt to collect a debt.

42. Defendants' misconduct has caused Plaintiffs to suffer actual damages.

43. As a result of Defendants' misconduct, Plaintiffs are entitled to actual damages and statutory damages in an amount to be determined at trial. Moreover, said Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive damages are warranted and demanded.

44. Pursuant to the controlling contractual document(s) and applicable law, Plaintiffs are entitled to recover costs and reasonable attorneys' fees.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE
## § 17200
### (Against All Defendants)

45. Plaintiffs repeat and re-allege each and every allegation contained above.

46. Defendants committed unlawful, unfair and/or fraudulent business practices, as defined by California Business & Professions Code § 17200, by engaging in unlawful, unfair and fraudulent business practices as alleged herein.

47. As a result of Defendants' misconduct, Plaintiffs have suffered various damages and injuries according to proof at trial.

48. Plaintiffs seek injunctive relief enjoining Defendants from engaging in unfair business practices described herein.

49. Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## FOURTH CAUSE OF ACTION
## FOR ABUSE OF PROCESS
### (Against All Defendants)

50. Plaintiffs re-allege and incorporate by reference all the allegations set forth above.

51. Defendants have used the inherent power of the courts to further their ulterior motives.

52. Defendants have known, or should have known, that the foreclosure on the Subject Property was invalid and illegal in violation of Federal Law, including but not limited to the United States Bankruptcy Code, yet defendants pursued possession of the Subject Property *via* the power of the courts by pursuing and proceeding with foreclosure proceedings and unlawful detainer proceedings in the name of Dusk, LLC without any valid basis for

commending such suit in the name of said entity and without first obtaining relief of stay in violation of the United States Bankruptcy code. Defendants performed the acts alleged herein willfully and with full knowledge of their illegality.

53. Because of Defendant's abuse of process, plaintiffs have suffered - and continue to suffer - extreme emotional distress as well as economic damages.

54. Plaintiffs therefore seek all proper remedies with respect to the Defendants' misuse of judicial power, including damages relating to the Plaintiffs' obligation to hire counsel, related economic damages and damages for emotional distress related thereto.

**WHEREFORE, PLAINTIFF DEMANDS JUDGMENT AS FOLLOWS:**

1. Declaratory judgment that defendants' conduct violated the FDCPA, The Rosenthal Act and that defendants violated B&P code 17200;
2. That plaintiffs recover economic and non economic damages as a result of the conduct alleged herein;
3. That the plaintiffs recover all attorney fees and costs in this action, and that the court award any other appropriate relief;
4. Any other further legal and/or equitable relief to which Plaintiffs might be entitled at law or which the Court deems proper, including, according to proof,

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**MACALUSO & ASSOCIATES**

DATED:   October 24, 2011        By: _____
                                     Todd E. Macaluso, Esq.
                                     Attorneys for Plaintiffs

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
NICHOLAS MARSCH, III and PATRICIA MARSCH;

### DEFENDANTS
FRANDZEL, ROBINS, BLOOM & CSATO, a Limited Liability Company and KENNEDY WILSON, a Publicly Traded Company incorporated in the State of Delaware,

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
MACALUSO & ASSOCIATES, APC
2100 Palomar Airport Road, Suite 221
Carlsbad, CA 92011
760-448-1133

Attorneys (If Known)
'11 CV2460 IEG WMc

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 362 Personal Injury - Med. Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 365 Personal Injury - Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | PROPERTY RIGHTS | 450 Commerce |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | 640 R.R. & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 340 Marine | PERSONAL PROPERTY | 650 Airline Regs. | 830 Patent | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | 370 Other Fraud | 660 Occupational Safety/Health | 840 Trademark | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 371 Truth in Lending | 690 Other | | 490 Cable/Sat TV |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | 810 Selective Service |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 850 Securities/Commodities Exchange |
| 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 862 Black Lung (923) | 875 Customer Challenge 12 USC 3410 |
| 196 Franchise | | | 730 Labor/Mgmt. Reporting & Disclosure Act | 863 DIWC/DIWW (405(g)) | [X] 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | 740 Railway Labor Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | 510 Motion to Vacate Sentence | 790 Other Labor Litigation | 865 RSI (405(g)) | 892 Economic Stabilization Act |
| 220 Foreclosure | 442 Employment | Habeas Corpus: | 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 443 Housing/Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 894 Energy Allocation Act |
| 240 Torts to Land | 444 Welfare | 535 Death Penalty | IMMIGRATION | | 895 Freedom of Information Act |
| 245 Tort Product Liability | 445 Amer. w/Disabilities Employment | 540 Mandamus & other | 462 Naturalization Application | 871 IRS - Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 290 All Other Real Property | 446 Amer. w/Disabilities Other | 550 Civil Rights | 463 Habeas Corpus - Alien Detainee | | 950 Constitutionality of State Statutes |
| | 440 Other Civil Rights | 555 Prison Condition | 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC §1692

Brief description of cause:
Unfair Debt Collection

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $ _____
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE 10/24/11
SIGNATURE OF ATTORNEY OF RECORD /s/

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

CSDJS44